CF\Ritter\Answer\Sept. 12, 2002

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARNOLD WEINSTEIN : | |
| : | |
| v. : | |
| : | |
| CHARLES M. RITTER & ASSOCIATES, : | Civil Action |
| INC., CHARLES M. RITTER, : | |
| U.S. INDUSTRIES, INC., ZURN : | |
| INDUSTRIES, INC., ALEX MARINI : | |
| US BRASS CORPORATION, : | No. 02-CV-3836 |
| FRANK SCHAETZKE, HANSGROHE, INC., : | |
| CHRIS MARSHALL and : | |
| WILLIAM WALLACE : | |

### ANSWER TO PLAINTIFF'S COMPLAINT

CHARLES M. RITTER & ASSOCIATES, INC. (sometimes, "Employer") and CHARLES M. RITTER hereby file Answer to the Complaint of Arnold Weinstein ("Weinstein") as follows:

1. Denied. It is admitted that this is an action filed against Employer and Ritter for age discrimination pursuant to terms of the Pennsylvania Human Relations Act (the "Act") and the common law of Pennsylvania.

2. Admitted in part and denied in part. Employer is not aware of any request for an injunction.

3. Denied. It is denied that the controversy equals or exceeds $150,000 in its best light.

4.    Admitted.

5.    Admitted.

6.    Admitted.

## PARTIES

7.    Neither admitted nor denied.  Defendant Employer and Ritter are without information with which to admit the facts other than that it was believed Weinstein was 69 years of age when employed by Employer.

8.    Admitted in part and denied in part.  It is admitted that Employer is a Pennsylvania corporation.  Employer ceased operations in June of 2002 and closed its principal place of business.  Its address is now c/o Ritter.  It is admitted that from the date of Weinstein's employment to the date of his termination Employer was an employer as defined under the PHRA having five or six employees.  Employer was never an employer as defined under the ADEA.  Employer ceased being an employer under the PHRA in November 2000, as thereafter it had only three employees.

9.    Admitted in part and denied in part.  It is denied that any discriminatory acts were taken against Weinstein by anybody in any capacity.

10.    Denied.  It is admitted that Employer represented Zurn Industries, Inc. before Weinstein's employment.  It is denied that Weinstein was the victim of any discriminatory act or that any entity or individuals aided or abetted in any discrimination.

11.    Denied.

12.    Denied.  Employer represented U.S. Brass after its acquisition by Zurn and before Weinstein was employed by Employer.  It is denied that Weinstein was the victim of any discrimination.

2

13.     Denied.

14.     Denied.  Employer represented Hansgrohe, Inc.  It is denied that Weinstein was the victim of any discrimination.

15.     Denied.

16.     Denied.

## FACTUAL BACKGROUND

17.     Denied.  It is admitted that Weinstein was employed by Employer on or about early January 1998.  At that time Weinstein was 69+ years of age.

18.     Denied.  Weinstein had closed his business because it was failing financially.  Weinstein implored Employer to hire him and as an inducement represented that he would bring three lines which he would assign to Employer.  The lines were American Valve, Barclay and Hansgrohe.  The product manufacturers thereafter agreed to be represented exclusively by Employer, not Weinstein.  In consideration for a salary and business percs, including the payment of the premium of an existing life insurance policy, the provision of a luxury car and the payment of expenses, Weinstein promised he would actively sell products from these lines and Employer's other lines on a fulltime basis in his designated territory to a level that his efforts would be profitable to Employer.

19.     Denied.  The lines were assigned to Employer as the exclusive representative in the territory with consent of the companies.  Plaintiff represented that he would sell the lines and other Employer lines to Employer's customers in his designated territory on a profitable basis for Employer after deducting his and the Employer's overhead.  Weinstein was not sure how long he wanted to continue working.  No discussions were held with respect to the disposition of the lines after Weinstein terminated for any reason his employment other than

Employer would be the exclusive representative. It was also agreed that other Employer employees would sell Employer's lines in their respective territories covered by them. At the time the lines or Weinstein's efforts to sell the lines had not been profitable to Weinstein or to Weinstein's company, which is the reason Weinstein closed his company and accepted employment with Employer.

20.    Denied. It is admitted that Weinstein was placed on Employer's payroll in January of 1998. Weinstein was paid a salary (not commission income) and other benefits. It is denied that Weinstein ever satisfactorily performed his duties, worked consistently on a fulltime basis or with any intent to produce profit for Employer. Weinstein's employment incurred substantial loss for the Employer until such time as the Employer had to lay him off because it did not have sufficient funds to make payroll. Employer had also discovered that Weinstein was working simultaneously on a part-time basis for a real estate agency in Lovelvadies, New Jersey.

21.    Denied. Employer thought no more about Weinstein's age than when it hired him at age 69.

22.    Denied. Ritter hired Weinstein at age 69+.

23.    Denied. Ritter's only concern was about Employer's customers and their inducement and intent to buy product from Employer on a regular and profitable basis.

24.    Denied. It is believed and averred that Ritter and Weinstein did have discussions about Weinstein's retirement, which discussions were originated by Weinstein and were not conclusive.

25.    Denied. During the course of Weinstein's employment when the financial results of Weinstein's sales efforts were continuing to fail, Ritter and Weinstein discussed Weinstein's production and his ability, disposition and intent to increase his sales results within

his territory.   In or about January 2000, the Employer, because of financial reasons, stopped paying Weinstein's life insurance premiums on a life insurance policy not provided by the Employer, but continued his salary and car payments.  This action was taken with the knowledge and consent of Weinstein because Weinstein's lack of sales results was a large financial burden on Employer, taking into consideration his total overhead cost.

26.    Admitted.  Ritter promised to start paying Weinstein's insurance premium again only when Weinstein increased his sales production to an extent that Employer could afford to pay the premium.

27.    Denied.  On or about that date, Ritter announced that Weinstein was laid off because the Employer could not make payroll and could not afford to pay Weinstein at his current rate of salary.  Weinstein was told that he would continue on layoff until the Employer could afford to pay Weinstein and Weinstein could develop his sales to a profitable level.

28.    Denied.  Ritter took action to protect Employer and Employer's relationship with its product lines within Employer's territory and with the product manufacturer.  It is believed and averred that on or about March of 2000 Weinstein had no product lines, having assigned three of them to Employer with the consent of the product manufacturer.

29.    Denied.

30.    Denied.

31.    Denied.  It is believed and therefore averred that after January of 1998 Zurn had no representation relationship or direct relation with Weinstein and was concerned only with the sales results of Employer.

32.    Denied.

33.    Denied.  It is believed and therefore averred that after January of 1998, U.S. Brass had no representation relationship or direct relation with Weinstein and was concerned only with the sales results of Employer.

34.    Denied.

35.    Denied.  It is believed and therefore averred that after January of 1998, U.S. Brass had no representation relationship or direct relation with Weinstein and was concerned only with the sales results of Employer.

36.    Denied.

37.    Denied.  It is believed and therefore averred that Weinstein immediately began an employment relationship with Miller & Company in Philadelphia, Pennsylvania, while Employer believed Weinstein was on layoff from Employer.  It is further believed and averred that Weinstein attempted to have all product manufacturers transfer their product lines to Miller & Company.

38.    Denied.  It is believed and therefore averred that Weinstein started active employment with Miller & Company selling plumbing products within four weeks of being laid off by Employer.

## COUNT I

39.    Denied.

40.    Denied.  Employer made no age-based comments and did not terminate Weinstein's employment because of age.  If Employer were to discriminate against Weinstein because of age, Employer would not have employed Weinstein.  Employer terminated Weinstein because of his lack of performance, his failure to work fulltime, while secretly working in another business, and for economic necessity.

41.    Denied for the reasons stated in Response No. 40.

42.    Denied.  It is believed and, therefore, averred that Employer never spoke to Zurn or to Marini about Weinstein.

43.    Denied for the reason that Weinstein was not a topic of discussion as stated in Response No. 42.

44.    Denied for the reason that Weinstein was not a topic of discussion as stated in Response No. 42.

**WHEREFORE,** Defendant Employer Ritter & Associates, Inc. and Charles Ritter respectfully request that judgement be entered in its and his favor and against Weinstein and grant to Ritter & Associates, Inc. and Charles Ritter their costs and reasonable attorney's fees incurred in defending this matter.

Respectfully submitted,
HEANEY & KILCOYNE, LLC


By:_____
          Daniel B. Pierson, V, Esquire
          34th Floor
          1601 Market Street
          Philadelphia, PA  19103-2316
          Telephone:    215-299-4324
          FAX:          215-299-4364

DATE:_____